DIBERT, APPELLEE, *v.* ROSS PATTERN & FOUNDRY DEVELOPMENT CO., INC., APPELLANT.*

*Motion to certify the record overruled, March 12, 1958.

266

(No. 147—Decided December 6, 1957.)

*Miss Grace Fern Heck* and *Mr. William E. Bailey,* for appellee.

*Mr. Karl E. Paulig, Mr. Donald M. Gibbs* and *Messrs. Durfey, Martin, Brown & Hull,* for appellant.

CRAWFORD, J. This is an appeal on questions of law from a judgment for the plaintiff, appellee herein, for personal injuries and property damages to an automobile in the sum of $37,500.

The evidence indicates that about 7 a. m. on December 1, 1950, plaintiff was proceeding northwardly on state route No. 69, just north of the intersection of Runkle Road, in a 1949 Buick four-door sedan; that at the same time and place Harley Bernard Blakely, an employee of the defendant corporation, appellant herein, while in the course of his employment, was proceeding southwardly in a 1946 Chevrolet two-ton stake truck weighing approximately 6,800 pounds, loaded with 3 or 4 tons of aluminum castings; that an unusually heavy snow had covered a considerable section of the highway at that point with a snow drift variously estimated at approximately 1 to 3 feet on the east side, and approximately 2 to 5 feet on the west side of the highway; that a snow plow had cut a path variously estimated at approximately 7 to 12 feet in width; that this path or clear-

ing was, according to plaintiff's witnesses and some of defendant's witnesses, either wholly or principally on the east half or north bound portion of the 20 foot pavement of state route No. 69; that the intersection of state route No. 69 with Runkle Road, which runs roughly east and west, was clear of drift, although the dimensions of such clear space north from the intersection were in dispute; that at some point north of the intersection, variously estimated by the witnesses at approximately 80 feet to 200 feet, the two vehicles collided, the left front corner of the truck and the left rear quarter of the automobile coming together; that immediately after the collision the right-hand portions of both vehicles were in or against the snow drifts on their respective sides of the cleared space, the truck being parallel to the highway and the automobile either parallel or at an angle of 20 or 30 degrees to the highway, the truck being south and somewhat west of the automobile, with the rear of the truck some 8 or 10 feet south of the automobile and at such distance from the rear of the Buick as to afford barely enough space for vehicles to pass between them; and that the plaintiff was lying upon the highway, gravely and permanently injured.

The carefully prepared briefs have discussed separately the 32 assignments of error. In the interest of clarity we shall in general follow the same plan.

### 1.

The record shows a statement by the court, apparently silently acquiesced in by three jurors, that during a recess he and they had held a conversation in chambers on a subject wholly unrelated to the case on trial. There is no showing that anyone was prejudiced thereby.

Nor does the record show that counsel complained about the incident at the time. He cannot wait until an adverse verdict is returned and then initiate his objection.

### 2.

Plaintiff's witness Charles Rust, an experienced automobile mechanic who arrived on the scene soon after the collision had occurred, testified that from his examination of the damages to the two vehicles it was his opinion that "the blow would have had to have been at an angle of about 20 or 30 degrees, or approximately the same angle that the car was in when I picked it up."

The witness was properly qualified as an expert in his field. This particular question and answer appear to be within the reasonable scope of opinion testimony, being essentially a characterization of the damage which the witness personally observed.

It should be noted that the witness Herbert Falkner was later permitted to testify to the same effect without objection.

And this testimony is not inconsistent with defendant's driver's version of the collision, that the plaintiff's car ran into the snowdrift on the east, throwing the rear end in front of the truck.

3.

Plaintiff's exhibit B was a map of the two highways, state route No. 69 and Runkle Road, prepared by an engineer and drawn to scale. In the course of the testimony of certain witnesses counsel had them mark the map with small circles and crosses in various colors to indicate their respective recollections as to the location of the snow drift and of the open lane which had been cleared through the drift.

The practice of permitting recorded testimony of this type to go to the jury is often frowned upon. However, in this respect our examination of the exhibit in question and of the evidence produced on both sides of the case indicates that these small marks relating to one phase of the testimony, if erroneous, could hardly have been prejudicial.

Counsel's particular objection here is that this procedure constituted a violation of the order of separation of the witnesses, which had been made by the court, and that subsequent witnesses were thereby enabled to perceive the testimony of earlier witnesses. Such matters, including the order of separation, rest in the sound discretion of the court. Again, our examination of all the evidence and particularly of this exhibit, which shows among other things that no two witnesses agreed completely, fails to indicate an abuse of discretion.

4.

It is objected that plaintiff's medical witnesses were permitted to give their opinions as to a causal relationship between his injury and his present condition.

From time immemorial such witnesses have testified on

such matters, and it is a technical subject upon which their testimony is peculiarly appropriate and helpful.

The general charge of the court correctly and properly instructed the jury as to its significance and their complete freedom to find the facts.

### 5.

Both as alleged in the second amended petition and as shown by the proof, Mrs. Leah Dibert, wife of the plaintiff, incurred expenses for herself and another person, who helped take the almost helpless plaintiff to the Cleveland Clinic. Having been pleaded, these expenses constituted a proper element of plaintiff's damage. There is no rule of law requiring that such items be paid to or for professionals in order to be recoverable.

### 6.

Whether payroll records were available to show plaintiff's earnings at the time of his injury or not, either he, if mentally capable, or his wife would be competent to testify upon such a subject of which they had personal knowledge. The best evidence rule would not render their testimony inadmissible. See 21 Ohio Jurisprudence (2d), 274, Evidence, Section 256.

It should be observed that if the fact is questioned, the payroll records, belonging to a third party, were presumably equally available to the objecting party by subpoena; but these were not brought in.

The allegations in the second amended petition, that plaintiff has been permanently injured, that he was earning $280 per month at the time of the accident, and that he has since been unable to work except for a specified temporary period are fully adequate to bring in issue the matter of lost earnings. 16 Ohio Jurisprudence (2d), 295, 296, Damages, Section 162.

### 7.

The seventh assignment of error is that the court improperly admitted evidence of the cost of remodeling plaintiff's residence so as to enable his wife to care for him. The remodeling consisted of adding a bedroom and bathroom on the first floor; the cost, according to the only testimony in the case, that of the plaintiff's wife, was approximately $3,000.

Plaintiff's second amended petition, upon which he went to trial, makes no mention of this item. Defendant points out that

such a claim is in the nature of special damages, which must be specially pleaded.

The purpose of requiring that "special damages—damages of such a nature that they do not follow as a necessary consequence of the injury complained of—must be specially pleaded" (16 Ohio Jurisprudence [2d], 293, Section 160) is of course to give a defendant timely notice of the nature of the claim made against him.

Inasmuch as it is generally held that such usual and ordinary items of damage as physicians' bills, hospital and other medical expenses must be specially averred (16 Ohio Jurisprudence [2d], 300, Damages, Section 166), then clearly such an unusual and extraordinary expenditure as that for remodeling plaintiff's house, however urgent, must also be specially alleged. The admission of this evidence was error, prejudicial to defendant.

Plaintiff attached to his brief the affidavit of a juror to the effect that the jury did not consider this item of damage. The case of *Piatt* v. *St. Clair's Heirs*, 6 Ohio, 227, is cited as authority for such procedure and as indicating the propriety of our considering it.

This particular feature of that case has apparently had little if any effect on subsequent decisions. And in view of the strong public policy and the general rule of law against permitting jurors themselves by their testimony alone to impeach their verdicts, it is well to bear in mind that if we were to permit one party to produce a juror's affidavit to explain and support the verdict, we should in all fairness be required to permit his opponent to try to destroy or impeach the verdict by employing the same method.

But be that as it may, we can not consider this affidavit for any purpose because this is an appeal on questions of law only, and the affidavit is not part of the record.

In the absence of other error prejudicial to the defendant, it would appear proper to allow the plaintiff to accept a remittitur in the only amount testified to in this connection, namely, $3,000, as that would effectively cure the error. As pointed out by plaintiff, there is precedent for such procedure in this court, as well as elsewhere. *American Automobile Ins. Co.* v. *Dayton Parking Co.*, 82 Ohio App., 466, 79 N. E. (2d), 687.

### 8.

Income or compensation other than the lost earnings claimed are irrelevant. Hence, the court properly excluded evidence of any pension available to plaintiff. 16 Ohio Jurisprudence (2d), 254, Damages, Section 117.

Such evidence is not rendered admissible for any bearing it might have upon the question of when plaintiff might have been retired in the ordinary course of his employment. That matter, if admissible, could have been approached directly.

### 9.

As indicated under assignment of error No. 3 above, we can not give general approval to the practice of sending to the jury exhibits which have been marked by a witness, because of the danger of overemphasizing that particular testimony. The witness, Charles Rust, was permitted to mark upon an engineer's map (Plaintiff's exhibit A), his recollection of the location of the two vehicles as he found them after the collision; and this he did without any pretense of following the scale used in preparing the map.

However, in the present case the testimony upon this subject by the many witnesses was so extensive and the drawings in question varied so little from testimony even of witnesses for the defendant, except perhaps as to the distance of the vehicles north of the intersection, that we cannot feel that the jury was misled or the defendant prejudiced.

### 10.

At the close of plaintiff's evidence, the state of the record was such as to present a case for the determination of the jury, so that the court properly overruled defendant's motion for a directed verdict.

### 11, 23 and 27.

Both in plaintiff's special instruction No. 1 and in the general charge the court gave to the jury the definition of right-of-way as contained in Section 6307-2, General Code (Sections 4511.01 and 4513.01, Revised Code), then in force. He later charged that a violation of any of the statutes to which he referred would be negligence per se. It is contended that these two declarations enlarged the duty imposed by law upon the defendant.

The court, in giving the definition, identified it as such.

Standing alone, the definition does not impose a duty upon anyone. It is only in the light of other provisions of law and the pertinent facts that it can be determined who does or does not have the right-of-way.

There is no specific complaint that it was improper to charge that violation of any of the other statutes involved was negligence per se.

We find no error in connection with the manner of giving these charges.

### 12.

Plaintiff's special instruction No. 2 given before argument contained the essence of Section 6307-25, General Code (Section 4511.25, Revised Code), requiring motorists to keep to the right. It also states that this is a specific requirement, violation of which is negligence per se. This is a correct statement. Furthermore, defendant not having objected to the giving of this instruction at the time, he cannot be heard to do so now.

### 13.

Plaintiff's special instruction No. 3 is based upon Section 6307-30, General Code (Section 4511.30, Revised Code), forbidding vehicles at any time to be driven to the left of the center, or center line of the roadway when approaching within 100 feet of or traversing any intersection.

Defendant contends it was excused from this rule because the snow bank made it impossible for its truck to proceed on its right-hand side of the highway, and that the court should have so charged. It points out in particular subsection (B) of the statute which makes the rule inapplicable upon a one-way roadway.

Section 6307-32, General Code (Section 4511.32, Revised Code), empowers the highway department to designate highways or roadways for one-way traffic. No such steps were shown to have been taken here.

Furthermore, if, as defendant appears to contend, this was in effect a one-way highway so as to constitute an exception to the statute, we should next have to inquire as to the one direction in which traffic was permitted. Presumably it would be toward the north, the direction plaintiff, and not the defendant, was driving.

Several cases are cited in support of the contention that when compliance with a statute is rendered impossible by circumstances beyond the driver's control he is justified in proceeding otherwise than as prescribed by the statute. These cases pertain to predicaments which arise more or less unexpectedly and are in the nature of sudden emergencies. *Kohn, Admx., v. B. F. Goodrich Co.,* 139 Ohio St., 141, 38 N. E. (2d), 592; *Clemens v. Bishop,* 99 Ohio App., 303, 133 N. E. (2d), 402; *Kormos v. Cleveland Retail Credit Men's Co.,* 131 Ohio St., 471, 3 N. E. (2d), 427; *Thompson, Admx., v. Kerr,* 39 Ohio Law Abs., 113, 51 N. E. (2d), 742. Hence, they can not be held to determine the question here.

14 and 15.

Plaintiff's special instructions Nos. 4 and 5 which were given by the court over defendant's objections are as follows:

4. "The court instructs the jury that General Code Section 6307-25 sets forth a mandatory obligation upon all motorists to drive to the right side of the center or center line of the road, or highway, and any driver of an automobile on the highway, whether then in the exercise of due care or not, may assume that others driving on the highway will observe the terms of the statute."

5. "The court instructs the jury that the plaintiff, Harry Dibert, as he operated his automobile north upon route 69, had a right to assume, in the absence of knowledge to the contrary, that all southbound vehicles on route 69 including the defendant's truck, would keep to the west of the center line on route 69."

As pointed out by plaintiff, the Court of Appeals of this Appellate District (the Second) has heretofore declared the law to be in accordance with these special instructions. *Scott v. Spaulding,* 41 Ohio Law Abs., 449, 58 N. E. (2d), 815.

We deem it inappropriate to deviate from that declaration in this case.

It is objected that plaintiff's special instructions 2, 3, 4 and 5 are repetitious and redundant. Each instruction deals with a separate section of the General Code, or with a different syllabus of the case cited. While closely related, they do vary, and each contains a correct and applicable statement of law.

**16.**

Defendant's special request "A," refused by the court, embodies the contention advanced under assignment of error No. 13, as to excuse for impossibility of driving to the right of the highway, and the refusal was proper.

**17.**

Defendant's special request "C" was properly refused. It would have excused defendant from the requirement of Section 6307-25, General Code (Section 4511.25, Revised Code), that it proceed upon the right half of the roadway by applying the exception therein contained "when the right half of the roadway is closed to traffic." Plaintiff contends this exception applies only when a portion of a roadway is closed by public authority, as for example under the provisions of Section 6307-69, General Code (Section 4511.71, Revised Code).

We are disposed to agree with plaintiff that the expression means closed by public authority. The west half of this roadway was not actually closed to traffic; it was temporarily unavailable to ordinary vehicles because obstructed by the snow drift; yet it was permissible for any vehicle or mobile equipment of sufficient size and power to traverse it. It was therefore not "closed to traffic."

If we are right in this interpretation, the expression, "closed and obstructed by snow" contained in this requested instruction, is misleading.

The latter portion of the requested instruction declared plaintiff "guilty of negligence as a matter of law if plaintiff entered such lane from the south to collide with defendant's truck before the truck had emerged" from the single lane, under the circumstances conditionally stated, which defendant sought to prove. Such a statement would probably have confused the jury, seeming to imply that defendant had a right to be proceeding south in the single north bound lane, and employing the elusive expression "negligence as a matter of law." See 65 Corpus Juris Secundum, 322, Negligence, Section 1.

**18.**

Defendant's special instruction "D" was properly refused. It was an attempt to excuse defendant on the theory of sudden emergency on account of the claimed skidding of plaintiff's automobile.

At whatever precise point the collision occurred, it is clear from all the evidence that the truck had already proceeded for some distance in the single left-hand lane, in a potentially dangerous position. It was a continuing danger, not a sudden emergency. And when plaintiff's automobile approached from the south, whether it skidded or not, it constituted a danger which ordinary care on the part of a driver in the left-hand lane should have anticipated.

### 19.

Defendant's special instruction "E" is a confusing combination of two or more rules of conduct, neither of which is fully explained. For instance, the duty of ordinary care in the matter of keeping a lookout, and the basic element of speed in observing the assured clear distance ahead are both omitted at this point.

### 20.

Defendant's special charge "G" is on the subject of unavoidable accident. It cannot be said that ordinary care could not have prevented this collision. Hence the charge was properly refused. 65 Corpus Juris Secundum, 430, Negligence, Section 21.

### 21.

Defendant's requested instruction "H" is another combination of two rules of conduct. The brief repetition of the assured-clear-distance rule previously charged, while perhaps objectionable, is hardly prejudicial in itself.

But the remainder of the instruction is based upon a possible finding that plaintiff collided with some object or obstruction in the highway, "which object or obstruction had been in plaintiff's path or lane of travel before the collision at a sufficient distance ahead of him to have made it possible for plaintiff, in the exercise of ordinary care, to stop his vehicle and avoid a collision, and that such failure to stop contributed," etc.

We are unable to reconcile the combining together in one instruction of these two elements: (1) the assured-clear-distance rule, violation of which results in the impossibility of stopping, and (2) negligence in failing to stop when it was possible to do so.

This instruction also contains the vice of being abstract. We had supposed that the "object or obstruction in the highway" with which plaintiff collided was the defendant's truck. The argument in defendant's brief makes reference to the automobile striking the snow bank. The instruction may refer to one or the other, or both. The jury ought not to be confronted with this uncertainty.

## 22.

It is objected that the court erred in stating to the jury, in the course of the general charge, that the allegations of negligence contained in the second amended petition "connoted" that the defendant was negligent.

To connote is to imply. For the court to say that the pleading connoted or implied a certain thing is merely to explain the meaning of the pleading. This is a very different thing than for the court itself to connote or imply certain facts.

In addition to explaining the pleadings, the court clearly charged that the pleadings were not evidence.

## 24.

Section 6307-25, General Code (Section 4511.25, Revised Code), then in force, contained specific requirements. Hence, violation thereof was and has heretofore been declared negligence per se.

## 25.

Section 6307-26, General Code (Section 4511.26, Revised Code), with regard to the passing of vehicles in opposite directions, was charged, and violation thereof declared negligence per se.

This being a specific requirement, there was no error in so doing.

## 26.

The charge that defendant had the burden of proving contributory negligence is, of course, a correct statement even if not quite complete.

It is complained that the court failed to add that where the evidence raises a presumption or inference of plaintiff's own negligence the burden would rest upon him to remove the presumption or inference. If upon the evidence in this case such an inference arose, then in the event of failure of the court

to charge that principle it was incumbent upon defendant at the time to call the omission to the attention of the court, in order to complain now.

28.

The court gave a thorough explanation of the items and elements of damage. It is argued that he was not sufficiently precise in defining the measure of damages.

Here again the claimed error or omission should have been called specifically to the attention of the court at the time in order to be availed of here.

29.

It is contended that upon the evidence the court should have sustained defendant's motion for judgment notwithstanding the verdict.

It is not the province of the court to weigh the evidence upon such a motion. *McNees* v. *Cincinnati St. Ry. Co.,* 152 Ohio St., 269, 89 N. E. (2d), 138. In order to prevail upon such a motion the moving party must be entitled to judgment as a matter of law. Section 2323.18, Revised Code. Clearly the defendant was not so entitled.

30.

Any grounds contained in the defendant's motion for a new trial which are not specifically assigned and argued here may be deemed to be waived. Section 2505.21, Revised Code. Nevertheless, we have examined them and find no prejudicial error in connection with any of the matters therein mentioned.

31.

If there are any errors upon the face of the record which defendant has failed to urge specifically we have not been able to detect them.

32.

In support of its contention that the judgment and verdict were contrary to law and manifestly against the weight of the evidence, defendant advances a general and comprehensive argument which does not disclose prejudicial error in this or any other aspect.

The only prejudicial error which we have discerned being the admission of evidence of $3,000 special damages not pleaded, in connection with the remodeling of plaintiff's house, which

was set forth as assignment of error No. 7, this court will permit plaintiff to consent to a remittitur in that amount; if the remittitur is accepted, the judgment will be affirmed; otherwise the judgment will be reversed and the cause remanded for further proceedings according to law.

*Judgment accordingly.*

·HORNBECK, P. J., and WISEMAN, J., concur.