DEPOUW et al., Appellees,

v.

BICHETTE et al., Appellants.

[Cite as *Depouw v. Bichette,* 162 Ohio App.3d 336, 2005-Ohio-3695.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20893.

Decided July 15, 2005.

Christopher J. Snyder, for appellees.

Suzanne P. Brumbaugh, for appellant Jessica B. Bichette.

DONOVAN, Judge.

{¶ 1} Jessica Bichette is appealing the judgment of the Montgomery County Common Pleas Court that allowed a jury award to the plaintiff, Megan Depouw, for her husband's lost wages.

{¶ 2} Jessica Bichette and Megan Depouw were involved in a car accident in April 2001 in Kettering, Ohio. Mrs. Depouw was injured in the accident and was taken to the hospital. After an examination, Mrs. Depouw was released from the hospital with her left arm in a sling, her right arm in a cast, and a fractured collarbone. At the time of the accident, Mr. Depouw was at a hockey game. The police contacted him, and he left the game to go to the hospital. Over the next 11 days, Mr. Depouw took vacation leave from work in order to stay home with Mrs. Depouw and care for her. Mr. Depouw testified that he stayed home to care for Mrs. Depouw because she needed help bathing, going to the bathroom, and other tasks.

{¶ 3} Nearly two years after the accident, the Depouws filed a complaint against Bichette for negligence and loss of consortium due to the accident. Although Bichette admitted negligence, she did dispute the nature and extent of Mrs. Depouw's injuries and whether her negligence was the proximate cause of those injuries. At trial, Mrs. Depouw sought as part of her damages her husband's lost wages incurred as a result of his taking time off work to care for her. Mr. Depouw testified that he had missed 98 hours, the equivalent of approximately 12 days of work, because of the accident. As a result of those lost hours, Mr. Depouw testified, he lost wages of $2,787.12. Moreover, Mr. Depouw stated that his income is shared with his wife. Mrs. Depouw's lost wages were not considered by the jury because she had already been compensated for her lost income by Bichette's insurer.

{¶ 4} When the matter was submitted to the jury, the jury interrogatory for Mrs. Depouw's claim contained a blank line captioned "Loss of Thomas Depouw's Income." Defense counsel repeatedly objected to the inclusion of this section in the jury interrogatory, but the trial court overruled the objections. The jury returned a verdict for Mrs. Depouw in the amount of $29,825.08 and $5,000 for Mr. Depouw's loss-of-consortium claim. The jury interrogatory revealed that $2,500.08 of Mrs. Depouw's damage award was for income lost as a result of Mr. Depouw's taking time off work to care for his spouse.

{¶ 5} Bichette is now appealing the judgment of the trial court in overruling her objection and allowing the jury to consider as a part of Mrs. Depouw's damages the lost income incurred by her husband. Bichette raises the following assignment of error.

{¶ 6} "The trial court erred in permitting the jury to consider a husband's lost wages as a component of damages in his wife's personal injury claim."

{¶ 7} Bichette argues that Mrs. Depouw cannot recover for her husband's lost wages, as they were not actually and personally incurred by her. We disagree.

▆▆▆ {¶ 8} In Ohio, if one is injured due to another's wrong, he should be compensated for all of the damages that he has suffered. Restatement of the Law 2d, Torts (1979), Section 920A, Comment *b*; *Robinson v. Bates*, 160 Ohio App.3d 668, 2005-Ohio-1879, 828 N.E.2d 657. "The jury may allow as damages such reasonable amount as it may find that the plaintiff lost, as earnings, as the direct and natural result of the defendant's negligence, taking into consideration all the evidence concerning the plaintiff's age and physical condition before the injury, and the character of the plaintiff's employment." 30 Ohio Jurisprudence 3d (2004), Damages, Section 40, citing *Mikula v. Balogh* (1965), 9 Ohio App.2d 250, 38 O.O.2d 311, 224 N.E.2d 148.

{¶ 9} Few cases in Ohio have dealt with the situation in which damages were sought by an injured family member who received gratuitous nursing care from another family member. *Griffen v. Cincinnati Realty Co.* (1913), 27 Ohio Dec. 585; *Cincinnati Omnibus Co. v. Kuhnell* (1884), 9 Ohio Dec.Rep. 197; *Bowe v. Bowe* (1903), 26 Ohio C.C. 409; *Rouse v. Riverside Methodist Hosp.* (1983), 9 Ohio App.3d 206, 9 OBR 355, 459 N.E.2d 593; *Howard v. McKitrick* (July 2, 1987), Franklin App. No. 87AP–148, 1987 WL 13837. In *Griffen* and *Bowe*, the courts found that the injured party could not recover for the nursing services provided by a family member or for family members' lost earnings. However, in the *Kuhnell* decision, the court held that a mother could recover the value of the nursing care she provided to her injured son even though she could not recover the value of what she could have earned working outside the home.

▆▆▆ {¶ 10} The position in *Griffen* and *Bowe*—that nothing may be recovered for the gratuitous nursing services of family members—has clearly been abandoned in favor of the *Kuhnell* determination that the wrongdoer should at least be required to compensate the injured party for the value of the nursing services even if they were provided without charge by family members. *Rouse*, supra; *Howard*, supra. *Rouse* examined a situation in which a mother rendered extraordinary nursing services to her daughter, who had been injured in an act of medical negligence. The appellate court determined after a review of several similar cases in other states that the majority of the jurisdictions have found that a parent may recover for the value of nursing services provided to an injured child. Id., at 211, 9 OBR 355, 459 N.E.2d 593. In particular, the *Rouse* court cited *Scanlon v. Kansas City* (1935), 336 Mo. 1058, 81 S.W.2d 939. The *Scanlon* court had determined that the "measure of his recovery is the reasonable value of the services rendered as care and nursing," even if the family member lost no wages in caring for the injured party. Id. at 1068, 81 S.W.2d 939. The *Rouse* court found that Ohio courts should "allow a parent to recover from the wrongdoer the reasonable value of the care or attendance which he himself renders to his child as the result of a negligent injury." *Rouse*, 9 Ohio App.3d at

212, 9 OBR 355, 459 N.E.2d 593. Nursing services rendered gratuitously by a family member are recoverable as a collateral source, just as the value of nursing services could be recovered if the injured party had health insurance that paid for the services. *Howard,* supra (finding that an adult child could recover from the wrongdoer for the value of the nursing care she received without charge from her mother).

{¶ 11} We recognize that a majority of state and federal courts that have addressed the situation in which a spouse provides nursing care for an injured plaintiff, often losing wages as a result, have determined that the value to be awarded as damages is the cost of hiring an outside nurse to render the care, not lost wages. *Heritage v. Pioneer Brokerage & Sales, Inc.* (Alaska 1979), 604 P.2d 1059; *Rodriguez v. Bethlehem Steel Corp.* (1974), 12 Cal.3d 382, 115 Cal.Rptr. 765, 525 P.2d 669; *Strand v. Grinnell Auto. Garage Co.* (1907), 136 Iowa 68, 113 N.W. 488; *W. Union Tel. Co. v. Morris* (1900), 10 Kan.App. 61, 61 P. 972; *Jackson v. United States* (E.D.Ark.1981), 526 F.Supp. 1149; *Redepenning v. Dore* (1972), 56 Wis.2d 129, 201 N.W.2d 580; *Adams v. Erickson* (C.A.10, 1968), 394 F.2d 171; *Beckert v. Doble* (1926), 105 Conn. 88, 134 A. 154; *Byrne v. Pilgrim Med. Group, Inc.* (1982), 187 N.J.Super. 386, 454 A.2d 920; *Van House v. Canadian N. Ry. Co.* (1923), 155 Minn. 65, 192 N.W. 496; *Kaiser v. St. Louis Transit Co.* (1904), 108 Mo.App. 708, 84 S.W. 199; *Salida v. McKinna* (1891), 16 Colo. 523, 27 P. 810; *Kotsiris v. Ling* (Ky.1970), 451 S.W.2d 411; *Britton v. Dube* (1958), 154 Me. 319, 147 A.2d 452; *Howells v. N. Am. Transp. & Trading Co.* (1901), 24 Wash. 689, 694–695, 64 P. 786.

■ {¶ 12} However, a few courts have found that the value of wages lost by a spouse from caring for an injured party may be recoverable from the wrongdoer. *Kerns v. Lewis* (1929), 249 Mich. 27, 227 N.W. 727 (holding that husband could recover wages lost while caring for his injured wife for six months); *Pullman Palace–Car Co. v. Smith* (1890), 79 Tex. 468, 14 S.W. 993 (finding that a lower court did not err in awarding damages based on a husband's lost salary while caring for his injured wife); *Keeth v. State* (La.App.1993), 618 So.2d 1154 (finding that a wife could recover loss of earnings suffered while caring for her injured spouse).

{¶ 13} In the instant case, Bichette urges this court to align itself with the majority view that the injured party, Mrs. Depouw, cannot recover Mr. Depouw's lost wages, but rather can recover only the amount it would have cost to hire a home health-care aide. Ohio courts in *Rouse, Kuhnell,* and *Howard* have stated that an injured child receiving care from his or her parent could receive as damages the value of the nursing services freely given by the parent. Although the amount the parties received in those cases was the value of the nursing services, not the amount of lost wages, the plaintiffs in *Rouse* and *Howard* did

not make an argument for receiving the value of lost wages, and *Kuhnell* was decided long before women routinely worked outside of the home. Thus, Ohio has not firmly established itself with the majority position that the only permissible damage award for care provided by a family member is the cost of the nursing care as if provided by an outsider. A review of the factual situation in this case leads this court to the conclusion that the minority viewpoint is correct and that Mrs. Depouw should be able to recover for her husband's lost wages.

{¶ 14} When an individual is injured by the negligence of another and requires assistance with basic daily functions, it is not unreasonable for a spouse to prefer the assistance of a loved one over a total stranger, especially for a brief period such as in this case. As a consequence of Bichette's negligence, the marital income of the Depouws was reduced as a result of Mr. Depouw's lost wages.

 {¶ 15} Mrs. Depouw disputes Bichette's claim that she did not personally incur a loss as a result of her husband's providing care. Mrs. Depouw argues that her husband's wages were joint income and thus her loss as well. R.C. 3103.03(A) provides that "[e]ach married person must support the person's self and spouse out of the person's property or by the person's labor. If a married person is unable to do so, the spouse of the married person must assist in the support so far as the spouse is able." This statute indicates that spouses in Ohio have a duty to financially support each other and share their income with each other. Therefore, in the instance of a married couple, the loss of one spouse's wages due to care of an injured spouse is a financial loss to the injured spouse as well as the noninjured spouse. Mr. Depouw had a duty to use his salary to support Mrs. Depouw. Thus, Mrs. Depouw correctly asserts that when Mr. Depouw took off work to care for her, she, as his spouse, lost income for which she could be compensated. Although Mr. Depouw used vacation leave for the time he was away from work, this was still a loss of a financial benefit to the couple. We agree that family income was lost as a result of Mrs. Depouw's care, and their financial resources clearly would have been reduced by compensating an outside nurse.

██ {¶ 16} The amount an injured party must spend for nursing care and services needed due to the injury is owed by the wrongdoer. If a family member chooses to render those services, the injured party should be reasonably compensated for those services to the extent that they reduce marital income. In this case, the evidence supports the jury's determination that Mrs. Depouw required basic care. Mr. Depouw testified that she was unable to go to the bathroom, dress herself, or feed herself. Clearly, Mr. Depouw was entitled to provide the needed care for his wife. Moreover, Bichette as the wrongdoer should not be able to benefit from the fact that Mrs. Depouw had a spouse willing to provide the care to her. Bichette's negligent actions caused Mrs. Depouw's injuries and

the need for nursing care. Therefore, she is responsible for the loss of income to the Depouws. We cannot agree with Bichette that Mr. Depouw could choose not to stay and care for his injured wife himself but had to hire an outsider to come in and care for her. In particular, in a situation such as this, where Mr. Depouw was absent from work for only 12 days, we cannot say that he was wrong to care for his spouse rather than hire a nurse. Considering the small amount of time Mr. Depouw was off work and the fact that Bichette was responsible for Mrs. Depouw's injuries and her need for nursing care, we cannot say that the trial court erred in permitting the jury to consider Mr. Depouw's lost wages without limiting the award to the cost of home health care. Bichette's assignment of error is without merit and is overruled.

{¶ 17} The judgment of the trial court is affirmed.

Judgment affirmed.

YOUNG, J., concurs.

GRADY, J., dissents.

FREDERICK N. YOUNG, J., retired, of the Second Appellate District, sitting by assignment.

GRADY, Judge, dissenting.

{¶ 18} I respectfully dissent from the decision of the majority and would instead reverse and vacate that part of the trial court's judgment that awarded Megan Depouw money damages in the amount of the wages that the jury found that Thomas Depouw lost while he stayed at home to care for Megan Depouw's injuries.

{¶ 19} In the complaint the plaintiffs filed, Thomas Depouw pleaded a claim for loss of consortium. He made no claim for his lost wages. Megan Depouw alleged that she had "incurred medical expenses in an amount not yet determined, and lost income in amounts as not yet determined, and may continue to suffer such losses in the future."

{¶ 20} Megan Depouw was employed outside the home. She was unable to work due to her injuries, and she lost wages she would have earned but for her inability to work. However, she was compensated for her own lost wages by the tortfeasor's insurer. The record suggests that it was not until the day of trial that defendant learned that Megan Depouw intended to offer evidence of Thomas Depouw's lost wages to prove her own lost-income claim. Defendant then made an oral motion in limine to exclude that evidence, arguing that it was not evidence of a loss that Megan Depouw had suffered "directly."

{¶ 21} The trial court overruled defendant's motion. The court reasoned that the wages Thomas Depouw lost while he stayed at home to care for his wife are "a loss to the family," adding that "the jury will [have] to decide whether the care [he gave his wife] was necessary, for Mr. Depouw to stay at home or not."

{¶ 22} Thomas Depouw testified concerning the debilitating and painful nature of the bodily injuries his wife suffered, explaining that he stayed home from work to care for her as a result. He testified that he missed "98 hours or 12.25 days of work total." He stated that the total amount of wages he lost as a result was $2,787.12. The evidence was admitted by the court over defendant's further objections.

{¶ 23} Defendant renewed her objection to the claim for Thomas Depouw's lost wages in connection with the jury instructions the court proposed to give. The court overruled the objection, and in its instruction to the jury, the court stated:

{¶ 24} "You will decide by the greater weight of the evidence an amount of money that will reasonably compensate the plaintiff for the actual injury proximately caused by the negligence of defendant.

{¶ 25} "In deciding this amount, you will consider the nature and extent of the injury, the effect upon physical health, the pain and suffering experienced, the ability or inability to perform usual activities, *Tom Depouw's loss of income*, and the reasonable costs of necessary medical and hospital expenses incurred.

{¶ 26} "From these, you will determine what sum will compensate the plaintiff for her injury to date." (Emphasis added.)

{¶ 27} In addition, the court submitted a special interrogatory to the jury pursuant to Civ.R. 49(B), which set out six forms of damages the jury could find that Megan Depouw suffered "as a direct result of the defendant's negligence," allowing a separate award for each. One of these was "(4) Loss of Thomas Depouw's wages." The jury entered $2,500.08 as the amount of its award on that claim. The total of all damages the jury awarded Megan Depouw was $29,825.08. Thomas Depouw was awarded $5,000 on his claim for loss of consortium.

{¶ 28} Civ.R. 9(G) states: "When items of special damage are claimed, they shall be specifically stated." The Rules Advisory Committee Staff Notes define special damages as "a damage measurable by proof of market value or out of pocket expense." The amount of the wages that Thomas Depouw lost while off work before the complaint was filed is a measurable damage.

{¶ 29} The purpose of special-pleading requirement Civ.R. 9(G) is to avoid surprising opposing counsel by requiring the pleader to provide specific notice of measurable losses at the pleading stage. *Morrison v. Devore Trucking, Inc.* (1980), 68 Ohio App.2d 140, 22 O.O.3d 223, 428 N.E.2d 438. We have held that where special damages are not specifically pleaded, it is improper to admit into

evidence matters dealing with their recovery. *Dibert v. Ross Pattern & Foundry Dev. Co.* (1957), 105 Ohio App. 264, 6 O.O.2d 73, 152 N.E.2d 369. We have also held that no recovery can be had for special damages not pleaded. *House v. Moomaw* (1964), 120 Ohio App. 23, 28 O.O.2d 211, 201 N.E.2d 66.

{¶ 30} Megan Depouw's pleading that set out her general claim for "lost income" failed to comply with the special-pleading requirement of Civ.R. 9(G). The trial court therefore erred when it admitted evidence to prove Megan Depouw's general claim for lost income. And defendant appears to have been surprised by Megan Depouw's intention to offer evidence of Thomas Depouw's lost wages to prove her lost-income claim. Defendant's motion to exclude evidence of Thomas Depouw's lost wages did not argue the defect in Megan Depouw's pleading, however. Therefore, the particular error in admitting the evidence despite the Civ.R. 9(G) defect is waived. Defendant's objection instead complained that the evidence was irrelevant to prove Megan Depouw's claim because it was not evidence of a loss she suffered directly. The court overruled the objection, relying on the loss of "family income" it represented. The further issue is whether that view correctly stated the applicable law in the instructions and the interrogatory that the court provided to the jury concerning Megan Depouw's claim for damages, to which defendant did object.

{¶ 31} A jury charge must correctly state the law applicable to the facts that the jury must decide. *Marshall v. Gibson* (1985), 19 Ohio St.3d 10, 19 OBR 8, 482 N.E.2d 583. Reversible error occurs if a jury charge is incomplete, misleading, or incorrect. Id. Likewise, an interrogatory that is based on an incorrect statement of the law should not be submitted. *Wightman v. Consol. Rail Corp.* (1994), 94 Ohio App.3d 389, 640 N.E.2d 1160.

{¶ 32} Compensatory damages are defined as those that measure actual loss and are allowed as amends therefor. *Fantozzi v. Sandusky Cement Prod.* (1992), 64 Ohio St.3d 601, 597 N.E.2d 474. They are intended to make the plaintiff whole for a loss resulting from a wrong committed by the defendant and accrue at the time of the injury. *Digital & Analog Design Corp. v. N. Supply Co.* (1992), 63 Ohio St.3d 657, 590 N.E.2d 737.

{¶ 33} "In general, the damages that may be recovered in a civil action are, in the absence of any statutory modification of the rule, such only as are the natural and probable consequences of a tortious act or breach of contract on the part of the defendant, for the wrongdoer, or party in default, is responsible only for the proximate, and not for the remote, consequences of his or her actions." 30 Ohio Jurisprudence 3d (2005) Damages, Section 14.

{¶ 34} "The principle that damages may be recovered only for such injuries as flow directly from, and as the probable and natural result of, the wrong complained of necessarily excludes all those consequences of the act that are

remote and indirect, and all investigation of losses that are purely speculative, and denies an allowance of damages for injuries remotely consequential from a tortious wrong." Id., Section 15.

{¶ 35} Persons who suffer bodily injury due to the negligence of a tortfeasor and are unable to engage in gainful employment as a result suffer a direct loss from that inability to work, which is compensable in money damages. The reasonable measure of damages, typically, is the value of wages the injured person did not earn.

{¶ 36} The theory of lost "family income" that the trial court adopted permitted Megan Depouw to recover damages for the entire amount of the wages Thomas Depouw did not earn. The majority approves that application on a holding that, because it was reasonable under the circumstances for Thomas Depouw to provide the care his wife needed, the jury could find that Megan Depouw suffered a loss because of his inability to work, which is compensable in the amount of wages her husband did not earn.

{¶ 37} That it was reasonable for Thomas Depouw to provide the care his wife needed might permit a finding that his resulting loss in the form of his inability to work was a natural consequence of the injury Megan Depouw suffered. However, that does not necessarily show that his loss was a probable consequence of her injury. More important, it does not at all make Thomas Depouw's inability to work a loss that Megan Depouw suffered "as the direct result of the defendant's negligence," which was the jury's finding.

{¶ 38} While it was unquestionably direct to Thomas Depouw, the wage earner who was unable to work, his inability to work was a loss that was only remote and indirect as to Megan Depouw. That is so regardless of any partial and collateral benefit she might expect from the wages he would otherwise have earned, which on this record is wholly speculative. Therefore, the wages Thomas Depouw did not earn were not compensable damages that could be awarded to Megan Depouw on her own claim for lost income.

{¶ 39} The majority finds support for the trial court's "family income" theory in R.C. 3103.03(A), which imposes an interspousal duty of support. However, any right that section conferred on Megan Depouw to share in the benefits of Thomas Depouw's wages is inchoate only. It does not make the entire amount of the wages he failed to earn or any specific portion thereof a loss that was whole and direct as to Megan Depouw. Stated otherwise, R.C. 3103.03(A) does not modify the rule of law that a loss must be direct to the party who is awarded damages to compensate for the loss.

{¶ 40} The majority nevertheless approves the trial court's ruling that Megan Depouw may recover Thomas Depouw's lost wages, adopting what it terms the

minority view. However, a review of the authorities cited offers no basis to find that a minority view exists that allows one plaintiff to recover for a loss of wages a coplaintiff suffered, even when they are married.

{¶ 41} Plaintiffs regularly recover for wages they lost while absent from work because of a personal injury caused by a tortfeasor's negligence. They have also recovered for wages they lost while absent from work while caring for a spouse who suffered a personal injury due to a tortfeasor's negligence. Injured parties have also recovered the reasonable value of nursing services that a family member gratuitously provided. The provider of such services has also recovered the reasonable value of such nursing care. However, in no instance has an injured coplaintiff been awarded damages to compensate her for a coplaintiff's inability to work while providing for the injured person's care, as Megan Depouw was in the amount of the wages her husband failed to earn. Our holding to the contrary adopts a wholly novel and singular rule of the law of damages, an extension of the law that is unwise and unnecessary.

{¶ 42} Thomas Depouw might have pleaded his own claim for the wages that he failed to earn, but he didn't. Had he pleaded the claim, the jury could have awarded him damages in the amount of the wages he was unable to earn while absent from work to care for his wife had the jury also found that his inability to work was a natural and probable consequence of his wife's injuries. The jury might have found that, or it might have found instead that his decision to stay home from work was an unforeseen consequence of his wife's injuries, and therefore not probable, even though it was reasonable. The trial court's lost "family income" theory and the instructions and interrogatory it gave the jury assume that as a consequence of his wife's injuries, Thomas Depouw's loss was foreseeable, and therefore probable, improperly removing that issue of fact from the jury's consideration. The assumption the court made is posited on a "but for" test, which has no application to damage awards.

{¶ 43} The trial court erred when it gave an instruction to the jury containing an incorrect statement of law, allowing the jury to consider evidence of a loss of her husband's inability to work where that loss was only remote and indirect as to Megan Depouw, and when it submitted an interrogatory permitting the jury to then find that her husband's lost wages are a measure of the damages to which Megan Depouw is entitled for a loss she suffered "as a direct result of defendant's negligence." I would sustain the error assigned and modify the judgment by deleting the amount of Thomas Depouw's lost wages from the damages that were awarded to Megan Depouw.