HUTCHINGS ET AL., APPELLANTS, *v.* CHILDRESS ET AL., APPELLEES.

[Cite as *Hutchings v. Childress,* 119 Ohio St.3d 486, 2008-Ohio-4568.]

(Nos. 2006–1703 and 2006–2183—Submitted September
12, 2007—Decided September 17, 2008.)

PFEIFER, J.

{¶ 1} The question certified to us by the Fifth District Court of Appeals is:

{¶ 2} "Whether spouses can recover the income lost due to one spouse caring for another or whether they may only recover the cost to hire outside home health care."

{¶ 3} We hold that part of the injured spouse's damages against a defendant can include the fair market value of the home health care provided by the uninjured spouse. Damages are measured not by the lost income of the supporting spouse but by the market value of the services he or she renders.

### Factual and Procedural Background

{¶ 4} On January 8, 1999, plaintiff-appellant Nancy Hutchings was injured in an automobile accident caused by appellee David Childress, an employee of appellee Central Ohio Paintball, Inc. Nancy suffered a traumatic brain injury; she suffers confusion and memory loss that affect her ability to think, speak, drive, and perform household activities. Nancy filed a claim against appellees for her injuries; her husband, John, filed a claim for loss of consortium.

{¶ 5} John has functioned as a caregiver for Nancy since her injury. He spent the first six weeks after the accident at home caring for his wife and has continued to attend therapy and medical appointments with Nancy. He has taken over all of Nancy's household activities and continues to take time off from work to care for his wife.

{¶ 6} John is a financial planner. The plaintiffs claimed that his business suffered because John was required to spend time away from his job duties to attend to Nancy and that his business continues to suffer because Nancy requires continuing care. At trial, the Hutchingses presented evidence of the economic

loss the family suffered due to John's caring for his wife; an economist testified that John has lost income because of time spent caring for Nancy and that his time missed from work would produce an income gap of between $1,775,000 and $2,296,000 over the expected length of his work life. The Hutchingses also offered testimony about the economic value of the household duties Nancy can no longer perform. They did not, however, present any evidence of the cost to hire professional nursing care for Nancy.

{¶ 7} The trial court refused to instruct the jury that it could award either plaintiff damages for John's loss of income during the time he spent caring for Nancy, concluding that Ohio law did not support including as damages a spouse's lost income for caring for an injured spouse. The jury returned a verdict in favor of the Hutchingses for $255,000 on Nancy's claims and $20,000 on John's claim for loss of consortium. The trial court's judgment entry included the following language:

{¶ 8} "The Court further granted defendants' request not to instruct the jury on plaintiffs' claim for John Hutchings' lost income resulting from the injuries suffered by Nancy Hutchings."

{¶ 9} The Hutchingses appealed, arguing that the trial court had erred in refusing to instruct the jury that it could award as damages the income John lost as a result of staying home and providing care to his wife. On November 17, 2006, the appellate court affirmed the judgment of the trial court, holding that the jury could not award to either plaintiff damages for John's lost wages resulting from gratuitous nursing care he provided to his wife:

{¶ 10} "With regard to Mr. Hutchings['] claim that he should be compensated for his lost wages resulting from the care he provided to his wife, we agree with the trial court and the other appellate districts in this State that find that the jury cannot consider and award damages for Mr. Hutchings' lost wages resulting from the gratuitous nursing care he provided to his wife.

{¶ 11} " * * *

{¶ 12} "We do not find that the trial court erred in not allowing the jury to consider Mr. Hutchings' lost wages resulting from his inability to work as such loss was not necessarily a probable consequence of Nancy Hutchings' injuries. Such lost wages were not a loss that Nancy Hutchings necessarily suffered as the direct result of the defendant's negligence." *Hutchings v. Childress*, Delaware App. No. 05CAE05–031, 2006-Ohio-7323, 2006 WL 6013390, ¶ 29–32.

{¶ 13} Also on November 17, 2006, the appellate court granted the Hutchingses' motion to certify a conflict, finding that its decision conflicted with the Second District Court of Appeals' decision in *Depouw v. Bichette*, 162 Ohio App.3d 336, 2005-Ohio-3695, 833 N.E.2d 744.

{¶ 14} The cause is before this court upon the acceptance of a discretionary appeal and upon the certification of a conflict.

## Law and Analysis

{¶ 15} We face a question in this case that has been addressed by few Ohio courts and never by this one: May an injured spouse recover damages from a tortfeasor for income lost by the uninjured spouse while the uninjured spouse is caring for the injured spouse? The provision of care by a spouse to an injured spouse is to be admired and encouraged. But can a price be placed upon such priceless care?

{¶ 16} If there is to be recovery of lost income, it cannot be a part of the uninjured spouse's claim for loss of consortium. A claim for loss of consortium is not based upon economic damages. "Consortium consists of society, services, sexual relations and conjugal affection which includes companionship, comfort, love and solace." *Clouston v. Remlinger Oldsmobile Cadillac, Inc.* (1970), 22 Ohio St.2d 65, 51 O.O.2d 96, 258 N.E.2d 230, syllabus. The uninjured spouse's loss-of-consortium claim is based upon the loss of the services provided by the injured spouse before his or her injury. The uninjured spouse's income from his own employment is not a service that the injured spouse once provided. Thus, any recovery of damages for care provided to an injured spouse must be part of the injured spouse's claim.

{¶ 17} Ohio courts have addressed issues concerning the recovery of damages for the care provided by a family member on several occasions. Only in *Depouw,* 162 Ohio App.3d 336, 2005-Ohio-3695, 833 N.E.2d 744, the case certified as conflicting with the decision of the court below, has a court held that the injured spouse could recover the income her spouse lost when he missed work to care for her. In an early case addressing care provided by a spouse, *Griffen v. Cincinnati Realty Co.* (1913), 15 Ohio N.P. (N.S.) 123, 27 Ohio Dec. 585, 1913 WL 1009, the court granted a motion to strike a claim for lost wages brought by the uninjured spouse. The plaintiff wife had sought recovery of the wages lost when she temporarily gave up her seamstress job to care for her injured husband. The court held that the husband had not contracted with his wife to provide such care, and thus she could not recover for the value of her nursing services, holding, "For the value of these gratuitous services which are presumably prompted by affection, the husband can not recover, though they are usually far more valuable than the perfunctory ministrations of paid attendants." Id. at *1. Further, the court held that the wife could not recover for her lost wages because such damages were not foreseeable: "But surely defendants can not be charged with the responsibility for her choosing [to] temporarily terminate her separate employment so that she might nurse her injured spouse. Such result could not

be reasonably anticipated as a direct result of the alleged negligence of defendants." Id.

{¶ 18} Most of the Ohio decisions, however, allow recovery for the value of the nursing services provided. In *Howard v. McKitrick* (July 2, 1987), Franklin App. No. 87AP–148, 1987 WL 13837, the court held that an adult plaintiff could recover damages for the nursing care provided by her mother.

{¶ 19} The more common cases address the care provided to a minor child by his parents. Those cases have recognized a parent's right to recover damages for the value of the care they provided their injured child, but not for the parents' lost wages. In *Cincinnati Omnibus Co. v. Kuhnell* (1884), 9 Ohio Dec.Rep. 197, 1884 WL 4656, *3, the court held that "[t]he charge of the court that the mother was entitled to recover the loss to her which resulted from her having to nurse her son and not being able to earn anything outside, was erroneous, as the rule should have been the reasonable value of the nursing." In *Rouse v. Riverside Methodist Hosp.* (1983), 9 Ohio App.3d 206, 9 OBR 355, 459 N.E.2d 593, the court concluded that Ohio should follow the majority of states in awarding damages for care given by a parent to a child.

{¶ 20} *Depouw* stands alone in Ohio in awarding damages for income lost by an uninjured spouse while providing care to an injured spouse. The court in *Depouw* recognized its holding as an outlier, noting that "a majority of state and federal courts that have addressed the situation in which a spouse provides nursing care for an injured plaintiff, often losing wages as a result, have determined that the value to be awarded as damages is the cost of hiring an outside nurse to render the care, not lost wages." 162 Ohio App.3d 336, 2005-Ohio-3695, 833 N.E.2d 744, at ¶ 11. The cases cited in *Depouw* in support of the proposition that lost wages are recoverable involved instances in which damages were awarded to the uninjured spouse on his or her *own* claim; in *Depouw*, the court awarded the lost-income damages to the *injured* spouse. Moreover, the cases cited in *Depouw* do not delve deeply into the reasoning behind such awards. In *Kerns v. Lewis* (1929), 249 Mich. 27, 31, 227 N.W. 727, the court stated that the worth of the uninjured spouse's time was a proper element of damages; however, the plaintiff received only $500 from the jury for taking care of his injured wife for six months. In *Pullman Palace–Car Co. v. Smith* (1890), 79 Tex. 468, 471, 14 S.W. 993, the court found that the evidence tending to prove that the uninjured spouse's loss of three weeks at work while caring for his injured wife was not irrelevant. The only recent case cited in *Depouw*, *Keeth v. State Dept. of Pub. Safety & Transp.* (La.App.1993), 618 So.2d 1154, 1163, which held that "[o]ne may recover loss of earnings for attending to an injured spouse," directly conflicts with a subsequent Louisiana appellate decision, *Morgan v. Louis Cenac,*

*M.D.* (La.App.1994), 634 So.2d 60, 64, which held that the uninjured spouse's loss of earnings was not recoverable.

{¶ 21} *Depouw* was based on the duty of financial support that spouses owe to one another:

{¶ 22} "[S]pouses in Ohio have a duty to financially support each other and share their income with each other. Therefore, in the instance of a married couple, the loss of one spouse's wages due to care of an injured spouse is a financial loss to the injured spouse as well as the noninjured spouse." *Depouw*, 162 Ohio App.3d 336, 2005-Ohio-3695, 833 N.E.2d 744, at ¶ 15.

{¶ 23} Thus, the court reasoned that when the uninjured spouse missed work to care for the injured spouse, the injured spouse also lost income for which she could be compensated. The duty of support enunciated by the court is based upon R.C. 3103.03(A):

{¶ 24} "Each married person must support the person's self and spouse out of the person's property or by the person's labor. If a married person is unable to do so, the spouse of the married person must assist in the support so far as the spouse is able."

{¶ 25} R.C. 3103.03(A) requires spouses to support each other. The statute does not require spouses to work full-time or to earn a certain income. Nor does the statute require a spouse to forgo his or her employment to care for an ailing spouse. Absent a statutory duty to provide a certain level of income to a spouse or a duty to provide care to an injured spouse, we cannot agree that there is any statutory basis requiring tortfeasors to pay damages for an uninjured spouse's lost income.

{¶ 26} In *Depouw*, the court further reasoned that the tortfeasor should not benefit from the spouse's willingness to provide nursing care to the injured spouse:

{¶ 27} "The amount an injured party must spend for nursing care and services needed due to the injury is owed by the wrongdoer. If a family member chooses to render those services, the injured party should be reasonably compensated for those services to the extent that they reduce marital income. * * * Clearly, Mr. Depouw was entitled to provide the needed care for his wife. Moreover, * * * the wrongdoer should not be able to benefit from the fact that Mrs. Depouw had a spouse willing to provide the care to her. [The wrongdoer's] negligent actions caused Mrs. Depouw's injuries and the need for nursing care. Therefore, she is responsible for the loss of income to the Depouws." *Depouw*, 162 Ohio App.3d 336, 2005-Ohio-3695, 833 N.E.2d 744, at ¶ 16.

{¶ 28} Ultimately, the court in *Depouw* relied at least in part on the fact that the spouse's absence from his employment to care for his wife was of short

duration; thus, the outcome in *Depouw* seems as much the result of its holding's limited practical effect as it was the court's attempt to change the course of the law surrounding gratuitous care:

{¶ 29} "Considering the small amount of time Mr. Depouw was off work and the fact that [the wrongdoer] was responsible for Mrs. Depouw's injuries and her need for nursing care, we cannot say that the trial court erred in permitting the jury to consider Mr. Depouw's lost wages [$2,500.08] without limiting the award to the cost of home health care."  Id.

{¶ 30} We agree with one important aspect of the *Depouw* ruling:  a tortfeasor should not expect to benefit from the gratuitous care given to an injured party by a family member.  That holding in *Depouw* falls within the collateral-source rule, which has been defined as " 'the judicial refusal to credit to the benefit of the wrongdoer money or services received in reparation of the injury caused which emanates from sources other than the wrongdoer.' "  *Pryor v. Webber* (1970), 23 Ohio St.2d 104, 107, 52 O.O.2d 395, 263 N.E.2d 235, quoting Maxwell, The Collateral Source Rule in the American Law of Damages (1962), 46 Minn.L.Rev. 669, 670–671.  When an injured spouse needs care, the collateral-source rule prevents the tortfeasor from reaping the benefit of the uninjured spouse's gratuitous provision of that care.  The tortfeasor is responsible for the value of the care his negligence caused the injured party to need.  The court in *Howard* relied upon the collateral-source rule:

{¶ 31} "The trial court erred in denying the right to plaintiff to prove the reasonable value of the home nursing services rendered to her by her mother, even though those services were rendered to her gratuitously and as a result of the mother's moral obligation to her daughter.  The better rule is that these damages are recoverable as a collateral source in the same manner that the value of the nursing services could be recovered had plaintiff purchased health and/or accident insurance coverage which provided the funds to pay for the services."  *Howard*, Franklin App. No. 87AP–148, 1987 WL 13837, at *2.

{¶ 32} The majority of courts hold that an injured spouse may recover the market value of the care provided by the uninjured spouse.  The collateral-source rule is the basis behind such awards:

{¶ 33} "[W]hen the nursing services or other care are provided not by a paid employee, but by a relative or friend who does not charge for provision of these services[,] * * * a majority of courts have held that the plaintiff is entitled to recover the reasonable value of such services, because a failure to account for the value of these services would provide the tortfeasor with an undeserved windfall." 2 Stein on Personal Injury Damages (3d Ed.1997) 7–28, Section 7:11.

492

{¶ 34} However, the clear majority of courts do not allow recovery by the injured party for the wages lost when the uninjured spouse takes time off from his or her regular employment:

{¶ 35} "Most courts that have considered the effect of this circumstance have nevertheless held that the measure of damages for nursing services supplied by a relative who leaves his or her regular employment to render such services is not the amount of lost earnings but rather is the reasonable value of the nursing services supplied." Id. at 7–30.

{¶ 36} Courts have relied on the voluntary nature of the care provided by the uninjured spouse to determine that a defendant is not responsible for the consequences of the spouse's decision to provide care to his or her injured spouse:

{¶ 37} "[H]e stayed at home, more or less for the next two and one-half years to do the housework and take care of his wife. He deliberately chose to act as housemaid and nursemaid rather than as salesman. In these circumstances he cannot substitute loss of profits as the cost of such services. However, for taking care of his wife and doing the housework he was entitled to be paid what it would reasonably cost to hire such work to be done * * *." *Young v. Cantz* (1956), 85 R.I. 7, 11–12, 125 A.2d 181.

{¶ 38} Likewise, in *Rios v. Bigler* (D.Kan.1994), 847 F.Supp. 1538, 1547, the court held that "plaintiff's claim for the costs connected to the personal care she requires as a result of her injuries is proper. * * * It is irrelevant whether these services are provided by her husband voluntarily or whether she has to pay someone to perform them. * * * However, the court finds that she is not entitled to recover for her husband's lost wages as a result of his voluntary decision to leave his job and act as the care provider."

{¶ 39} We find the majority approach to be the consistent and practical way to resolve the issue. The benefit of spousal care is measured in its emotional value, not its economic value. The emotional value of the care cannot be quantified. The only practical way for courts to value a family member's care is to determine the economic value as if the care had been provided by a nonfamily member.

{¶ 40} In this case, the spouse providing the care is a stockbroker. Is the care that a stockbroker provides an injured spouse more valuable than the care provided by a spouse making the minimum wage? No. Does the value of a stockbroker's support of his spouse fluctuate with the stock market? No. The care a spouse provides is not more valuable to an injured plaintiff because of the nature of the job held by the person providing the care.

{¶ 41} The issue is one of causation and foreseeability. A tortfeasor who caused an automobile accident would expect to be responsible for paying a mechanic's rate for the repair of a plaintiff's automobile, not the hourly rate of a

surgeon who likes to tinker with automotive repair. Likewise, a tortfeasor would expect to pay the market rate for the care provided to the injured party, not the wages of a stockbroker who provided that care.

{¶ 42} A spouse's choice to take a break from employment to provide care is only indirectly attributable to a tortfeasor's actions. That choice is caused by a sense of obligation rather than by the accident. The benefit of spousal care inures to both the injured and uninjured spouse. The majority rule for compensation of spousal care, which allows recovery for the market value of the care provided, ensures that the benefit of that care does not inure to the tortfeasor.

{¶ 43} In this case, the Hutchingses presented no evidence of the cost of home nursing care. Their expert did testify as to Nancy's lost income and to the economic value of the household activities that she could no longer perform and that John performed instead. The trial court did not limit testimony about the economic value of the nursing care John provided; the plaintiffs simply did not seek to introduce that evidence. Instead, the Hutchingses introduced evidence only of the value of John's missed time from his job. The trial judge properly determined that such evidence was not relevant.

{¶ 44} The appropriate measure of damages for an uninjured spouse's provision of care to an injured spouse is the economic value of the care provided, not the value of the lost wages incurred in providing that care. Since the plaintiffs sought to introduce evidence only of the uninjured spouse's lost wages, we affirm the judgment of the appellate court.

Judgment affirmed.

MOYER, C.J., and O'DONNELL, LANZINGER, and CUPP, JJ., concur.

LUNDBERG STRATTON, J., concurs in part and dissents in part.

O'CONNOR, J., dissents and would dismiss the cause as having been improvidently accepted.

---

**LUNDBERG STRATTON, J., concurring in part and dissenting in part.**

{¶ 45} I concur that an injured spouse's damages can include the fair market value of the home health care provided by the uninjured spouse, not the market value of the uninjured spouse's lost wages. However, I would remand this case to permit Nancy Hutchings to present evidence of the economic value of the care that her husband, John Hutchings, provided to her.

{¶ 46} As the majority recognizes, John spent six weeks caring for Nancy after the accident and has continued to attend therapy and medical appointments with her. He also did all the household chores and continues to take time off to care for Nancy. Nevertheless, the majority prevents Nancy from recovering the cost

of the care and services provided by John because she failed to present evidence of the economic value of the cost of that care in the trial court.

{¶ 47} At the time that Nancy filed suit, this court had never addressed the type of damages that the injured spouse could recover for care provided by the uninjured spouse. And only a few appellate courts had addressed the issue. We accepted this issue because of a conflict between the appellate districts; the Second District Court of Appeals had held that an injured spouse could recover the *income* her spouse lost when he missed work to care for her. *Depouw v. Bichette,* 162 Ohio App.3d 336, 2005-Ohio-3695, 833 N.E.2d 744. Having now decided that the proper measure of damages for a spouse's services is the market value of those services, we should permit the parties to present evidence on that standard.

{¶ 48} Under the majority's holding, the Hutchingses will be deprived of compensation for their loss, which is recoverable under the rule that we announce today, and the tortfeasor will unjustifiably escape liability. I believe that such a result is unjust. I would remand the cause and permit the Hutchingses to present evidence of the economic value of the care provided by John. Accordingly, I concur with the rule set out by the majority, but respectfully dissent as to the majority's disposition of this case.

---

Cooper & Elliot, L.L.C., Rex H. Elliot, and Charles H. Cooper Jr., for appellants.

Frost, Maddox & Norman Co., L.P.A., and A. Scott Norman, for appellees.